RUTLEDGE V. SQUIRES.

1. **Partnership:** POWER OF MEMBERS TO BIND FIRM. A partnership is not liable upon a receipt or certificate of deposit executed in the firm name by an individual member thereof, for money deposited with or loaned to him on account of a matter not connected with the business of the firm, when the person to whom such receipt was executed knew this fact.

2. **Contract:** MILITARY SUBSTITUTE. The reception and muster-in of a military substitute by a local board of enrollment, and the issuing by said board of a certificate of exemption to the principal, does not entitle such substitute to claim of the principal the sum agreed to be paid, if he is afterward rejected on account of physical unfitness, by a supervisory examining board, before his *final* muster-in to the United States service.

*Appeal from Des Moines District Court.*

WEDNESDAY, JULY 31.

ACTION against the firm of C. P. Squires & Co., upon the following instrument:

"BURLINGTON, IOWA, March 13, 1865.
"Received this day of Capt. R. B. Rutledge, three hundred dollars on deposit.          C. P. SQUIRES & Co."

The petition simply alleges plaintiff's ownership of the instrument, demand and non-payment. Two answers were filed. The answer of C. P. Squires & Co. admitted that the instrument was signed by C. P. Squires, a member of the firm, but averred that it was so signed by mistake; that said C. P. Squires did not intend to sign the firm name, that the instrument was given by the said C. P. S. for his individual matters, as the plaintiff knew at the time, and as set forth in C. P. Squires' answer.

The separate answer of C. P. Squires alleged the same mistake as to signing the firm name, and also in sub-

stance, that the certificate of deposit in suit was given as follows: "About the 6th day of January, 1865, C. P. Squires (sole member of firm residing at Burlington), in view of the impending draft, contracted with one Andrew Petty to become his substitute, and agreed to pay him therefor $300, when he was accepted by the board of examination at Davenport, Iowa, and then and there finally mustered into the service of the United States; that defendant delivered said $300 to the enrollment board of the first congressional district having the control of substitutes, and claiming to control the county fund until the substitutes were finally mustered in at Davenport. The answer then avers that Petty was not accepted, but was rejected by the board at Davenport, on account of nonage and unfitness, and was never mustered into the service according to his contract with the defendant.

That on the 13th day of March, 1865, the plaintiff (who was provost-marshal of the first congressional district and a member of the board of enrollment of said district), and defendant, having heard that Petty was out of the service, but not knowing why, and plaintiff having possession of the said $300, it was agreed between plaintiff and defendant, that the money should be refunded to the defendant, to be held until it could be determined to whom said money rightfully belonged, and pursuant to this arrangement, the certificate of deposit in suit was executed, and by oversight, the defendant, C. P. Squires, signed the firm name thereto, instead of his own. Such were the answers.

On these issues the cause was tried to a jury.

It was claimed by the plaintiff that the $300 was by him *loaned* to the firm. This the firm denied. There was evidence tending to prove, in this respect, the claims of each party.

It was also maintained by the plaintiff, that the defendant was liable, because he had received the consideration for the $300 in this, viz.:

Petty was mustered into the service by the board at Burlington, and defendant (C. P. Squires) had thereupon received from said board a certificate of exemption, and the subsequent action of the board at Davenport, in rejecting Petty, could not affect the liability of the defendant to pay the $300; and the plaintiff claimed that if the money belonged to Petty, then the plaintiff, as his trustee or bailee, could sue for and recover it; if it belonged to the United States, then plaintiff, as former provost-marshal, and under the verbal direction of Major Duncan, acting assistant provost-marshal-general, could recover it for the use of the United States.

It was claimed by the defendant that his special contract with Petty was, that he should be accepted by the Davenport board, and that, as this board rejected him, defendant was not liable.

It was also claimed that if, as plaintiff maintained, defendant was to pay on Petty's being accepted by the Burlington board, still that the Davenport board was a supervisory tribunal with power to disregard the action of the local board, which they did, and that, as Petty was not received at Davenport, the defendant had never furnished an accepted substitute, was therefore liable to draft, and had received no consideration for his agreement to pay the $300.

The board at Davenport was constituted, according to the evidence, of medical officers appointed to act at Davenport by authority of the secretary of war (see circular No. 67 of war department, adjutant-general's office, dated Washington, D. C., August 26, 1864).

It was proved that this board, acting under the above authority did examine all recruits and substitutes received

at the general rendevous at Davenport, and approved them if they found them fit for service, and rejected them if they found them unfit.

Petty, defendant's substitute, was received, and, the testimony showed, mustered in at Burlington, but he was forwarded according to regulations to the general rendezvous at Davenport, and the $300 was retained by plaintiff or the board at Burlington.

The records of the board at Davenport show that, on the 20th day of January, 1865, "Andrew Petty, a substitute, was rejected for nonage and want of physical development, and reports forwarded, agreeably to part 3, circular 67, A. G. office, August 26, 1864."

Petty has not since been heard of.

The jury found for the defendants, and judgment was entered accordingly. Plaintiff appeals, and assigns for error the court's refusal to give certain instructions prayed for by him, and the giving of certain others asked for by the defendants.

*J. C. & B. J. Hall* and *Strong & Smythe* for the plaintiff (appellant).

*Charles H. Phelps* and *Tracy & Newman* for the defendants.

DILLON, J.—The verdict is not against the weight of evidence. The judgment below must be affirmed, unless the verdict for the defendants was brought about by erroneous rulings of the District Court. The errors complained of consist in erroneously giving and erroneously refusing to give certain instructions.

We proceed to examine the law as the court gave it to the jury. To determine whether the jury were correctly instructed, we must bear in mind the main or cardinal

Rutledge v. Squires.

points in the case as it was made before the jury by the evidence.

The plaintiff's action was against *the firm*. On the trial plaintiff claimed to recover against the firm, because 1. PARTNER-SHIP: power of member to bind firm. he loaned the $300 to the firm, and not to C. P. Squires; and he claimed that if he loaned it to the firm, he could recover it of the firm, notwithstanding any matter of defense or any equities which C. P. Squires, individually, might have, had he alone signed the instrument in suit.

How did the court instruct on this point? It gave, at the plaintiff's instance, the following to the jury: "If the jury believe from the evidence that the plaintiff, R. B. Rutledge, advanced and loaned to the defendants the sum of money mentioned in the certificate of deposit in suit, and that the said defendants have not paid the same, then the plaintiff is entitled to recover." This instruction, to say the least, is sufficiently favorable to the plaintiff. We need not inquire whether it was erroneous as respects the defendants, for the verdict was in their favor.

The plaintiff asked two other instructions relating to this point in his case, which the court refused to give. These were correctly refused, either because embraced in the one given, or because connected with other and objectionable propositions.

As to the liability of the firm, we may at this place further notice the instruction which the court gave at the instance of the defendants, and of which plaintiff complains. The court told the jury "that if the money was paid by C. P. Squires, individually, for the purpose of securing a substitute for himself, and not for the firm, or for firm business, and these facts were known to the plaintiff, and plaintiff afterward returned the money to the defendant. to be held until it could be determined to

whom the money rightfully belonged, then the firm of C. P. Squires & Co. are not liable to plaintiff on the paper sued on, even though signed in the firm name; especially if the jury find from the evidence that the firm name was signed by mistake instead of the name of C. P. Squires."

There is no just objection to this direction. It simply asserts that the *firm* would not be liable for the separate and individual transactions of one of its members, when the party seeking to enforce such liability knew all the facts. This is elementary law. The instruction referred to is wholly silent as to what, in the case supposed therein, would be the rights and liabilities of the individual partner who executed the paper.

Under the foregoing the jury must have found from the evidence that the transaction was that of C. P. Squires individually, that the plaintiff knew this, and that he did not loan the money to the firm. If they did so find, it cannot be fairly claimed that such finding was not warranted by the testimony.

This disposes of the case against the firm. We now proceed to inquire what were the instructions as respects

2. CONTRACT: military substitute. the liability of C. P. Squires? He claimed and introduced evidence tending to show that his special contract with Petty was, that he was to be received and accepted by the board at Davenport before he was entitled to the $300. The plaintiff denied that such was the contract, and affirmed that the contract was that Squires was to pay the $300 when Petty was accepted by the board at Burlington. Plaintiff introduced evidence tending to show that such was the contract.

At defendants' instance, the court instructed that, " if Squires contracted with Petty that the latter was to receive $300 on condition that he should be accepted, on examination by the board at Davenport; then if Petty was

rejected by the board at Davenport, Squires is not liable to pay the money, and plaintiff cannot recover."

The plaintiff excepted to this instruction. If the contract between Petty and Squires was such as this instruction supposes, and Petty was rejected, he would not be entitled to the money Squires agreed to pay, and in such case the money deposited for Petty would not belong to him. There was evidence upon which to base this instruction, and there was no substantial error in it. The plaintiff asked this instruction: "If the jury believe from the evidence that the money was delivered originally to Capt. Rutledge, the plaintiff, by C. P. Squires, to be delivered to Petty when said Petty should be accepted and mustered into the United States service, and a certificate of exemption issued by the board of enrollment, or when said Petty should arrive at the rendezvous at Davenport, and that said Petty was accepted and mustered into the service of the United States, and was, in pursuance thereof, sent to Davenport, then the money became the property of the plaintiff, and plaintiff would be liable to said Petty, and plaintiff would, under this state of facts, be entitled to recover." This the court gave to the jury with the modification: "But if the substitute was rejected for being unfit for military service, before being finally mustered into the service, he would not be entitled to the money, nor would the plaintiff for him, and plaintiff would not be entitled to recover."

Plaintiff excepted to the modification. The instruction as asked and given declared to the jury that if "Petty was accepted and mustered into the service and in pursuance thereof sent to Davenport," plaintiff could recover. To this plaintiff does not object, for the instruction was, thus far, as he asked it.

The modification presented to the jury the defendant's side of the case, and declared, that if Petty "was rejected

before being finally mustered into the service," plaintiff. could not recover. Plaintiff complains of the modification, but, as it seems to us, without just ground. It is simply the converse of the proposition embraced in the instruction which the plaintiff himself asked. Plaintiff, however, argues that the defendant's right to exemption, and Petty's right to the money, were perfect when Petty was received and mustered in by the Burlington board; and that the Davenport board had no authority to reject Petty; that they could "discharge" him, or, rather, recommend his discharge from the service, but they could not "reject him," in the sense of holding that he had never been in the service. The Davenport board was organized by order of the secretary of war, under circular 67, before referred to.

We have been shown no statute of congress which this circular contravenes. Unless prohibited, this office could, without doubt, authorize the organization of such a board. But, assuming the validity of the circular, the plaintiff claims that, under a proper construction of it, the board at Davenport had no authority *to reject* Petty, but only authority to examine him, and, if found unfit, recommend his discharge as required by orders and army regulations. We admit that the language of the circular is, in this respect, somewhat ambiguous. But the uniform *practice* under it (as testified by Dr. Richardson, a member of the board and the only witness on this subject), was to examine all recruits, substitutes, etc., sent from various parts of the State, and to reject such as were found unfit. Thousands were thus examined by the board. Dr. Richardson positively testified that Petty "was rejected as a substitute upon examination, *before being finally mustered in.*" The record in this case presents no data which will enable or authorize us to hold, as a matter of law, that the Davenport board had no power

*to reject* substitutes which had been accepted or sent forward by the board of enrollment.

As a matter of fact according to evidence, the Davenport board *did* exercise this power; claimed to exercise it, and in its exercise *rejected* Petty, and they did this, according to the testimony of Dr. Richardson, before he was "finally mustered in."

This makes the modification of the instruction proper under the evidence.

The foregoing covers all the substantial questions made on the trial or at least proper to be made upon the evidence.

It would too much extend this opinion to discuss in detail each instruction which is made the subject of complaint.

All have been carefully examined and no error has been found sufficiently grave to justify the reversal of a case, with the result of which, upon the evidence, we have no reason to feel dissatisfied.

There was no evidence given on the trial that this money belonged to or was claimed by the United States. Major Duncan's letter was not admitted for this purpose. And the plaintiff himself has settled with the United States, and was not obliged to account for the money now in suit. He simply claims that Major Duncan verbally ordered him to bring the action.

The judgment of the District Court is

                                         Affirmed.