## NOYES *et al.* v. CRANDALL *et al.*

1. While a member of a partnership engaged in the banking business, designated and appointed to act as cashier, has a legal right to transact all buisness within the inherent powers of such an officer, in determining his authority to bind the partnership by a particular act or by a course of dealing, usuages and customs that have not received judicial sanction must yield to legislative expressions, and to the decisions of the courts, when in conflict therewith.

2.. A draft, ostensibly made by a partnership engaged in the banking business, payable to the member thereof who signed it as chashier, though sufficient upon its face to put third persons upon inquiry, and raise a presumption that he is attempting to appropriate to his private use money belonging to the bank, is not conclusively void; and in an action against the partnership based thereon, by a creditor of the cashier, who has paid him full value therefor, evidence tending to show that the copartner of the cashier had authorized such officer to pay his individual debts to the plaintiffs out of partnership funds, or had sanctioned such conduct by habitually and knowinglypermittinghim to make drafts from time to time to their order for that purpose, is admissible, and should be submitted to the jury, to be considered under proper instructions relating to the subject of acquiescence or authority.

(Syllabus by the Court.   Opinion filed Jan. 4, 1895.)

Appeal from circuit court, Minnehaha county. Hon. FRANK R. AIKENS, Judge.

Action to recover the amount of a draft together with protest charges. From a judgment for defendant Crandall, plaintiffs appeal. Reversed.

The facts are fully stated in the opinion.

*Davis, Lyon & Gates,* for appellants.

One who takes a note or bill in payment of an existing debt is a *bona fide* holder thereof for value. 2 Am. & Eng. Ency. Law 292; 1 Dan. Neg. Ins. Sec. 184. The taking of a draft

payable to his order by a cashier of a bank to pay an existing debt is the same as his taking the money of the bank to pay it, there being a persumption that he took the money rightfully. Greeley v. Wyeth, 10 N. H. 15; Tyler v. Scott, 45 Vt. 258. Even if a partner exceeds his lawful authority to issue commercial paper in the name of the firm the partnership is nevertheless bound at the suit of a *bona fide* holder. National Bank v. Morgan, 73 N. Y. 593; Barrett v. Russell 45 Vt. 43.

*Bailey & Voorhees,* for respondent.

A bank officer cannot bind his bank by drafts drawn by him to his own order or by certifying checks drawn by himself. 1 Morse Bank & Banking 323; Claflin v. Bank, 25 N. Y. 293; Anderson v. Kissom, 35 Fed. 699; Graham v. Taggart, 11 Atl. 652; West v. Lanie, Bank v. Shawnll, 95 N. S. 557; 3 Kent. Com. 43; Story Partnership Sec. 132; Elleott v. Dudley, 19 Barb. 326; Bank v. Selden, 3 Minn. 155; 1 Lindley Partnership Sec. 171; 17 Am. & Ency. Law 1020; 1 Daniel Neg. Instr. 336; Ins. Co. v. Frat. 58 Me. 415; Smyth v. Strader, 4 How. 404.

One partner cannot apply the partnership funds or securities to the discharge of his own private debt without the consent of the other partner. Bank v. Cockran, 4 E. & R. 397; Lyon v. Fitch, 18 N. Y. 867; Rogers v. Batchelder, 12 Peters 221.

FULLER, J.   In the village of Hartford, on the 20th day of February, 1893, the defendants were, and for a few months prior thereto had been, engaged in the banking business as copartners, under the firm name and style of Merchants' Bank of Hartford, and during all such time F. S. McAllister, the cashier of said bank, was carrying on a retail drug business in the same town, under the firm name of F. S. McAllister & Co.   On the above mentioned date the following bill of exchange was drawn by the Bank of Hartford on its correspondent, the Merchants' Bank at Sioux Falls, of which the defendant Crandall was at the time president: ''Merchants' Bank of Hartford.

No. 486. Hartford, S. D., Feb. 1893. Pay to the order of F. S. McAllister, or order, $800.00 (eight hundred dollars). Duplicate unpaid. F. S. McAllister, Cashier. To Merchants' Bank, Sioux Falls." Plaintiffs are a copartnership engaged in the wholesale drug business at the city of St. Paul, and during all the time F. S. McAllister was cashier of the Merchants' Bank of Hartford, and for more than a year prior thereto he had been and was a customer of plaintiffs, and frequently made remittances to them for goods purchased for the purposes of his retail drug trade in the village of Hartford. . While defendants were operating their bank, and prior to the 25th day of February, 1893, numerous drafts of the Merchants' Bank of Hartford, on the Merchants' Bank at Sioux Falls, payable to the order of plaintiffs and signed "F. S. McAllister, Cashier," were sent by McAllister in payment of goods, and were all honored by said correspondent as soon as presented. On the day and date last above mentioned, and at the request of defendant McAllister, made in person at the office of plaintiffs, in the city of St. Paul, he received from plaintiffs $539.87 in cash and a credit of $260.13 on account, and indorsed and transferred to them in consideration therefor the above-mentioned bill of exchange, which was presented and protested for nonpayment three days thereafter, and this action was instituted by plaintiffs to recover from the defendants the amount of said draft, together with protest charges and the costs of the suit. There being no service of summons upon defendant McAllister, the action proceeded against the defendant Crandall, and at the conclusion of plaintiffs' evidence a verdict on motion was directed in favor of the defendant served and against the plaintiffs for costs. From a judgment entered thereon, and from an order overruling a motion for a new trial, plaintiffs appeal.

With great confidence counsel for respondents maintain that a draft drawn by a cashier to his own order is not negotiable, that a purchaser thereof for value is not an innocent holder without notice, and that the same is utterly void

as against the bank.   As no evidence was  offered on the part
of defendants, and  in  the  absence of anything  in the record
tending to show that the draft was not in fact paid for by or
charged to the account of the cashier at the time he drew the
same, the foregoing position must be justified  in  order to sus-
tain the judgment from  which  the  appeal is taken.    The trial
court excluded and withheld from the jury the evidence of nu-
merous  persons  of  extensive  experience in the banking busi-
ness, both in this state and in  the  monetary  centers  of  other
states, who testified, in effect, that it was, under certain circum-
stances, usual and customary for  cashiers to  make  drafts like
the one in  suit  to  their  own  order upon correspondent banks,
and that such drafts are received by bankers without hesitation
on that account, and are treated in  the  course  of  business as
current funds;  and  the  rulings of the learned court upon the
offer of this evidence are assigned as error.   If  a  partnership
created for and engaged in the banking business appoints, des-
ignates and holds out to the world a member thereof as cashier
it thereby authorizes such person to transact on its behalf all
business within the inherent powers of a  bank cashier;  but, in
order to ascertain the scope and  extent of his authority to bind
his bank, we must look to and be governed by  the  law and the
decisions  in  determinging  whether  a  particular  act  has
received  judicial  sanction,  and  is  justified  and  sustained
by  the  courts.    That  the  draft was  made  payable  to
the  individual  who  signed it as  cashier,  though  sufficient
to put third persons upon inquiry,  and  raise  a  presump-
tion that he was  attempting to  appropriate to his private
use money belonging to the bank, might not be sufficient to re-
lieve defendant Crandall from all liability in case it should
clearly appeared that he had authorized McAllister to  pay his
individual debts to the plaintiffs out of the funds of the bank,
or had sanctioned such conduct by habitually and knowingly
permitted  him  to  make  drafts  from  time  to  time  to
their  order,  and  for that  purpose,  upon  the  Merchants

Bank at Sioux Falls, of which bank said Crandall was president, and by which bank such drafts were promptly honored when presented for payment; and thus the question might become one of fact as well as of form.

It appears from the evidence that plaintiffs knew that McAllister was cashier of the Merchants' Bank of Hartford, and that he had frequently made remittances to them for goods which he had purchased by drafts issued by the Merchants' Bank of Hartford to the Merchants' Bank of Sioux Falls, signed "F. S. McAllister, Cashier," and that such drafts were in every instance promptly honored when presented for payment. If plaintiffs then knew, or, under the circumstances, ought to have known, that by using his official character McAllister was paying his personal obligations out of the funds of the bank deposited with the Merchants Bank at Sioux Falls, the fact that the drafts were made by McAllister payable to their order, instead of being made to his own order, and indorsed over to plaintiffs, would not be material. If they were made for his own personal use, without authority, their payment in either case could be enforced; and, as the drafts so drawn, paid, and canceled were in the possession of the defendant Crandall, who produced and offered them in evidence at the trial in obedience to an order of court, we are disposed to believe that such evidence, together with other facts and circumstances bearing upon the question of authorization, should have been submitted to the jury for its determination. Mr. Morse, in the first volume of his treatise on Banks and Banking, at page 98, says: "If A. openly and for a long time does certain things without special authority, and there is no objection from the directors, C. properly infers A.'s authority; for, if the directors knew of A.'s conduct, it is a clear case of estoppel, and, if this action was so open and long continued that they would have known of it by reasonable diligence, the bank cannot take advantage of the neglect of its agents in their duty as against one misled and injured thereby." In Anderson v. Kissam, 35 Fed. 699, cited

by respondent's counsel as a case in point, the court says:
"The facts in evidence certainly justified the submission of the
question to the jury whether the defendants did not have notice
that Warner was availing himself of fiduciary powers to use the
funds of the corporation for unauthorized purposes.   As the
checks were made payable to the order of the defendants for
Warner's individual use, in legal effect they were made payable
to Warner's own order.   The defendants knew that he was not
acting within the scope of any ordinary agency when he made
checks officially for use in his private transactions."   A course
of dealing between McAllister and the plaintiffs through the
bank owned by Crandall and himself might be of such a char-
acter as to establish an obligation on the part of the partner-
ship to pay the draft in suit, and, conceding that its recitals
were *prima facie* sufficient to raise a presumption that he was
attempting to defraud his copartner, such presumption would
not be conclusive, and plaintiffs would be entitled to prove that
McAllister was in fact authorized to make the draft as he did,
or that he had in fact paid for the same at the time it was
drawn.   1 Morse, Banks, 27; Hotchkiss v. Bank, 42 Barb. 517;
Rutledge v. Squires, 23 Iowa, 53; Hickman v. Kunkle, 27 Mo.
401; 1 Lindl. Partn. 171.   The case of Anderson v. Kissam,
*supra*, to which counsel for respondents direct our attention,
nas been carefully examined.   In that case defendants knew
that the numerous checks drawn by the cashier in his official
capacity upon the correspondents of his bank were so drawn
for his personal use, and as defendants drew the money on their
checks, and used it for the cashier in his speculations upon
Wall street, the court held, in an action against the defendants
by a receiver of the cashier's bank, brought to recover such
money, that it was proper for the jury to ascertain from the ev-
idence whether the directors of the bank were ignorant of the
fact that the cashier was so using the funds of the bank, and
that the jury was fully warranted in finding that the directors

of the bank were entirely ignorant of the cashier's acts, and that defendants knew, or had reason to believe, when they took the checks, that the cashier was not authorized by his co-managers to make them.    These facts, together with other circumstances offered on the part of the defendants, and bearing upon the question of the knowledge of the directors and the authority of the cashier to speculate on his own behalf with the funds of the bank, having been submitted to the jury, and found adversely to the defendants, the court, on appeal, sustained an order denying a motion for a new trial.    While the fact that the draft in suit, viewed in the light of the law, raises a presumption that it was drawn without authority, we think there were facts and circumstances in evidence tending to overcome this presumption, and bearing upon the question of knowledge and acquiescence on the part of defendant Crandall, which were sufficient to go to the jury under proper instructions relating to the subject of authority; and the judgment is therefore reversed, and a new trial is ordered.